

1   Guido Saveri (22349) guido@saveri.com
    R. Alexander Saveri (173102) rick@saveri.com
2   Cadio Zirpoli (179108) cadio@saveri.com
    William Heye (233249) william@saveri.com
3   SAVERI & SAVERI, INC.
    111 Pine Street, Suite 1700
4   San Francisco, CA 94111
    Telephone: (415) 217-6810
5    Facsimile: (415) 217-6813
6
7   Brian P. Murray
    Lawrence D. McCabe
8   MURRAY, FRANK & SAILER LLP
    275 Madison Avenue
9   New York, NY 10016
    Telephone: (212) 682-1818
10
11  Attorneys for Plaintiff Christian Duke
12  *Additional Counsel Listed on Signature Page*
13
14              **IN THE UNITED STATES DISTRICT COURT**
15            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
16                     **SAN FRANCISCO DIVISION**
17
18  **CHRISTIAN DUKE**, individually and on    CIVIL ACTION NO. ___ **1142**
    behalf of all others similarly situated,
19                                              )
              Plaintiffs,                       )  **CLASS ACTION COMPLAINT**
20                                              )
                vs.                             )  **JURY TRIAL DEMANDED**
21  **AIR NEW ZEALAND, ALL NIPPON             )
    AIRWAYS, CATHAY PACIFIC                    )
22  AIRWAYS, CHINA AIRLINES, EVA              )
    AIRLINES, JAPAN AIRLINES                   )
23  INTERNATIONNAL, MALAYSIA                   )
    AIRLINES, QANTAS AIRWAYS,                  )
24  SINGAPORE AIR, THAI AIRWAYS,              )
    UNITED AIRLINES**                          )
25            Defendants.                       )
26  _____           )
27
28

CLASS ACTION COMPLAINT

1     Pursuant to the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and

2  all others similarly situated, hereby bring this action for treble damages and injunctive relief

3  under the federal antitrust laws of the United States, Section 1 of the Sherman Antitrust Act of

4  1890, 15 U.S.C. § 1 ("Sherman Act") and Sections 4 and 26 of the Clayton Antitrust Act of 1914,

5  15 U.S.C. §§ 15, 26 ("Clayton Act") against Defendants. Plaintiffs complain and allege upon

6  information and belief except as to those paragraphs applicable to the named Plaintiffs, which are

7  based on personal knowledge, as follows:

8                              **NATURE OF THE ACTION**

9     1.      This action arises from a global conspiracy among certain airlines to fix, raise,

10  maintain, and/or stabilize prices for long haul passenger transpacific flights to and from the

11  United States ("Passenger Air Transportation"), and for fixed fuel surcharges on this

12  transportation ("Fuel Surcharges"). Fuel surcharges are fees charged to passengers by airlines

13  purportedly to compensate the airlines for increased fuel costs.

14     2.      Plaintiffs, on behalf of all persons and entities that purchased Passenger Air

15  Transportation, to and from the United States, from any of the Defendants and their co-

16  conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period

17  beginning on or about May 2004 to August 2007 (the "Class Period"), bring this action to recover

18  treble damages and injunctive relief for violations of the United States antitrust laws.

19     3.      At all relevant times herein, Defendants were airlines that conducted and sold

20  Passenger Air Transportation, and charged fixed Fuel Surcharges on that transport, to airline

21  passengers in the United States and throughout the world, including but not limited to flights to

22  and from Los Angeles and to and from San Francisco, California. Los Angeles International

23  Airport ("LAX") and San Francisco International Airport ("SFO") are considered the

24  international U.S. gateways to Asian and Pacific countries. The U.S. Department of

25  Transportation reported that in 2005 LAX and SFO were ranked in the top U.S. passenger

26  gateways to the world in scheduled passenger service. That year LAX and SFO had 24.6 million

27  gateway passengers, with the foreign share of the passengers at an average 67%.

28

CLASS ACTION COMPLAINT

1      4.      As further alleged herein, during at least the Class Period, Defendants agreed,

2   combined, and/or conspired with each other to fix, raise, maintain, and/or stabilize the prices of

3   Passenger Air Transportation and Fuel Surcharges thereon. As a result of Defendants' unlawful

4   conduct and conspiracy, Plaintiffs and the other members of the Class paid artificially high prices

5   for Passenger Air Transportation and Surcharges thereon, and have been damaged accordingly.

6                                   **JURISDICTION AND VENUE**

7      5.      This Complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.

8   §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit,

9   including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiffs

10  and the members of the Class by reason of Defendants' violations of Section 1 of the Sherman

11  Act, 15 U.S.C. § 1.

12     6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and

13  1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

14     7.      This Court has *in personam* jurisdiction over each of the Defendants because each

15  was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused

16  injury to persons and entities residing in, located in, or doing business in the Northern District of

17  California and throughout the United States.

18     8.      Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and

19  28 U.S.C. § 1391(b), (c), and (d) because during the Class Period many of the Defendants

20  resided, transacted business, were found, or had agents in this district, and because a substantial

21  part of the events giving rise to Plaintiffs' claims occurred, and a substantial portion of the

22  affected trade and commerce described below has been carried out, in this district.

23                                  **MULTI-DISTRICT LITIGATION**

24     9.      Venue is also proper in the Northern District because that court presides over the

25  multi-district litigation *In re International Air Transportation Litigation*, MDL No. 1793. The

26  Hon. Charles R. Breyer presides over the case, and the Court has and will be called upon to

27  address complex issues including jurisdiction, the scope of relief which may be accorded, the

28  application of United States' antitrust and airline law, notice and claims procedures for class

                                          3

1   members within and outside the United States, and the administration and distribution of any

2   funds which may be obtained through settlement and judgment.

3                                        **PARTIES**

4       10.    Plaintiff Christian Duke resides in the State of California. Plaintiff Duke

5   purchased Passenger Air Transportation from one or more Defendants during the class period

6   and has suffered pecuniary injury as a result of the antitrust violations alleged herein.

7       11.    Defendant Air New Zealand is a New Zealand company with its principal place of

8   business at Quay Tower, 29 Customs St. West, Auckland, 1020, New Zealand. Air New Zealand

9   conducts Passenger Air Transportation throughout the world, including into the U.S. and

10  especially California.

11      12.    Defendant All Nippon Airways is a Japanese company with its principal place of

12  business at Shidome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku, Tokyo 105-7133, Japan.

13  All Nippon Airways conducts Passenger Air Transportation throughout the world, including into

14  the U.S. and especially California.

15      13.    Defendant Cathay Pacific Airways is a Hong Kong-based company with its

16  principal place of business at 9 Connaught Road, Central Swirel Housepox Box 1 GPO, Hong

17  Kong K3. Cathay Pacific Airways conducts Passenger Air Transportation throughout the world,

18  including direct transpacific flights into the United States, especially California.

19      14.    Defendant China Airlines is a Taiwanese company with its principal place of

20  business at 131 Nanking E Rd., Section 3, Taipei, Taiwan. China Airlines conducts Passenger

21  Air Transportation throughout the world, including direct transpacific flights into the United

22  States, especially California.

23      15.    Defendant EVA Airways is a Taiwanese company with its principal place of

24  business at 16F.-1, No. 207, Fusing Road, Taoyuan City, Taoyuan County, Taiwan. EVA

25  Airways conducts Passenger Air Transportation throughout the world, including direct

26  transpacific flights into the United States, especially California.

27      16.    Defendant Japan Airlines International is a Japanese company with its principal

28  place of business at 4-11, Higashi-Shinagawa 2-chrome, Shinagawa-Ku, Tokyo 140-8605, Japan.

4

CLASS ACTION COMPLAINT

1    Japan Airlines International conducts Passenger Air Transportation throughout the world,

2    including into the United States, especially California.

3        17.    Defendant Malaysia Airlines is a Malaysian corporation with its principal place of

4    business at MAS Complex A, Sultan Abdul Azia Shah Airport, 47200 Suband, Selangor Darui

5    Ehsan, Malaysia. Malaysia Airlines conducts Passenger Air Transportation throughout the world,

6    including into the United States, especially California.

7        18.    Defendant Qantas Airways is an Australian company with its principal place of

8    business at Building A, 203 Coward Street, Mascot NSW 2020, Australia. Qantas Airways

9    conducts Passenger Air Transportation throughout the world, including into the United States,

10    especially California.

11        19.    Defendant Singapore Airlines is a Singapore company with its principal place of

12    business at Airline House, 25 Airline Road, 819829 Singapore. Singapore Airlines conducts

13    Passenger Air Transportation throughout the world, including direct transpacific flights into the

14    United States, especially California.

15        20.    Defendant Thai Airways is a Thailand company with its principal place of

16    business at 89 Vibhavadi-Rangsit Road, Bangkok, Thailand 10900. Thai Airways conducts

17    Passenger Air Transportation throughout the world, including direct transpacific flights into the

18    United States, especially California.

19        21.    Defendant United Airlines is a Delaware corporation with its principal place of

20    business at 77 W. Wacker Drive, Chicago, IL 60601. United Airlines is one of the largest

21    passenger airlines in the world with more than 3,600 flights a day to more than two hundred

22    destinations. United Airlines conducts Passenger Air Transportation throughout the world,

23    including into the United States, especially San Francisco International Airport, where United

24    Airlines operates a hub and maintenance operation center. United Airlines is the largest employer

25    in San Mateo County, California, which is located within this district.

26        22.    At all relevant times, other airlines, trade groups, or other entities, willingly

27    conspired with Defendants in their unlawful restraint of trade. All averments herein against

28

5

CLASS ACTION COMPLAINT

1    named Defendants are also averred against these unnamed co-conspirators as though set forth at

2    length.

3    23.    The acts alleged to have been done by Defendants were authorized, ordered or

4    done by their directors, officers, agents, employees, or representatives while actively engaged in

5    the management of each of the Defendants' affairs.

6                              **CLASS ACTION ALLEGATIONS**

7    24.    Plaintiffs bring this action on their own behalf and as a class action pursuant to

8    Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

9        All individuals or entities (excluding governmental entities,
         Defendants, and their parents, predecessors, subsidiaries,
10       affiliates, and their co-conspirators) who purchased
         passenger air transportation, for long haul transpacific
11       flights and who paid a fuel surcharge on their tickets from
         any of the Defendants and their co-conspirators or any
12       predecessor, subsidiary, or affiliate of each, at any time
13       during the period from May 2004 to August 2007.

14   25.    Because such information is in the exclusive control of Defendants,

15   Plaintiffs do not know the exact number of Class members. Due to the nature of the trade and

16   commerce involved, however, Plaintiffs believe that Class members number at least in the

17   thousands and are sufficiently numerous and geographically dispersed throughout the United

18   States and the world so that joinder of all Class members is impracticable. It is estimated that

19   there were more than 15 million passengers traveling to the Pacific out of California in 2006.

20   26.    There are questions of law or fact common to the Class, including:

21       a.    Whether Defendants engaged in a combination or conspiracy among

22   themselves to fix, raise, maintain, and/or stabilize Passenger Air Transportation and Surcharge

23   prices charged effecting commerce in the United States and throughout the world;

24       b.    The duration of the conspiracy alleged in this Complaint and the nature

25   and character of the acts performed by Defendants in furtherance of the conspiracy;

26       c.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

27       d.    Whether the conduct of Defendants, as alleged in this Complaint, caused

28   injury to the businesses or property of Plaintiffs and the other members of the Class;

                                     6

1       e.      The effect of Defendants' conspiracy on the Passenger Air Transportation

2   and Surcharge prices charged in the United States and throughout the world during the Class

3   Period; and

4       f.      The appropriate measure of damages sustained by Plaintiffs and other

5   members of the Class.

6       27.     Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of

7   the Class members. Plaintiffs will fairly and adequately protect the interests of the Class.

8   Plaintiffs purchased Passenger Air Transportation and Surcharges from one or more Defendants,

9   and their interests are coincident with and not antagonistic to those of other members of the

10  Class. Plaintiffs are represented by counsel competent and experienced in the prosecution of

11  antitrust and class action litigation.

12      28.     The questions of law and fact common to the members of the Class predominate

13  over any questions affecting only individual members.

14      29.     A class action is superior to other methods for the fair and efficient adjudication of

15  this controversy. Treatment as a class action will permit a large number of similarly situated

16  persons to adjudicate their common claims in a single forum simultaneously, efficiently, and

17  without the duplication of effort and expense that numerous individual actions would engender.

18      30.     Class treatment will also permit the adjudication of relatively small claims by

19  many Class members who otherwise could not afford to litigate an antitrust claim such as is

20  asserted in this Complaint.

21      31.     This class action presents no difficulties in management that would preclude

22  maintenance as a class action.

23                          **TRADE AND COMMERCE**

24      32.     Throughout the Class Period, there was a continuous and uninterrupted flow of

25  Passenger Air Transportation in international commerce throughout the United States and

26  especially into and out of Los Angeles and San Francisco. Defendants' unlawful activities, as

27  described herein, took place within the flow of commerce to Passenger Flight customers

28

7

CLASS ACTION COMPLAINT

1 throughout the world, and had a direct, substantial and reasonably foreseeable effect upon

2 interstate and international commerce in the United States.

3 **PLAINTIFFS AND THE CLASS SUFFERED INJURY THROUGH**

4 **COLLUSIVE PRICE INCREASES AND SURCHARGES**

5    33.    As Defendants controlled a vast majority of the Passenger Flight services during

6 the Class Period with their dominant combined market share, Passenger Flight customers were

7 unable to shop for Passenger Air Transportation from other carriers during that period, because

8 of the lack of competition which allowed Defendants to reap enormous profits from the Fuel

9 Surcharges.

10    34.    In addition, Fuel Surcharges were often treated by Defendants and other carriers

11 similar to a tax or other surcharge, such as an airport facility charge or a government mandated

12 September 11 security charge. As such, Fuel Surcharges were not always advertised as part of

13 Defendants' fares, and were added on to the base fare as part of the purchase transaction.

14    35.    Because surcharges generally are designed to compensate for increased external

15 costs, they should bear a relatively constant relationship to external cost levels. Thus, in a

16 competitive market, Fuel Surcharges should rise and fall at relatively constant ratios to the

17 associated jet fuel costs. Since their inception in 2004, the ratio of Defendants' Surcharges to

18 external costs has increased steadily. The Fuel Surcharges bore no relationship to the Defendants'

19 actual fuel costs or fuel cost increases.

20    36.    The ratio of Defendants' profits to external costs was therefore quite high due to

21 the concerted implementation and maintenance of the agreed-upon Passenger Air Transportation

22 and Fuel Surcharge price levels. So despite increased fuel costs during the Class Period,

23 Defendants' Surcharges were actually responsible for outstanding profit growth for Defendants

24 beyond record fuel costs.

25 **DEFENDANTS AND THE PASSENGER FLIGHT MARKET**

26    37.    Each Defendant possesses significant market share on their routes of travel. The

27 principal competitors for the Defendants in the transpacific long haul Passenger Air

28 Transportation market are therefore one another.

8

1      38.    Passenger Air Transportation is a commodity product that is fungible in the sense

2  that Passenger Air Transportation provided by any one airline is readily substitutable for the

3  Passenger Air Transportation provided by any other airline.

4      39.    Passenger Air Transportation is a homogenous service sold by airlines, including

5  Defendants, to airline customers, including Plaintiffs and the members of the Class, primarily

6  based on price.

7      40.    The Passenger Air Transportation market in the United States and worldwide is

8  highly concentrated, and there exists substantial barriers to entry in this market; both factors

9  facilitate the implementation and maintenance of a horizontal price-fixing cartel such as that

10  perpetrated by Defendants and alleged herein.

## DEFENDANTS' CONCERTED FUEL SURCHARGES

12      41.    Generally, surcharges are a feature of the global air transportation market, in

13  which airlines charge extra fees to their customers, above and beyond basic flight rate charges,

14  with the intent of defraying certain external costs of the carriers.

15      42.    Beginning in 2004, Defendants agreed to act in concert with one another in

16  demanding the Surcharges to defray fuel costs and agreeing when and how much to increase the

17  Surcharges to their Passenger Flight customers.

18      43.    Defendants were aware that their imposition of Fuel Surcharges and other

19  surcharges would not be successful if their supposed competitors did not join them; otherwise,

20  customers would be free to seek out lower prices. For this reason, Defendants entered into

21  agreements to raise surcharges at the same times and in the same amounts.

22      44.    But for Defendants' Passenger Air Transportation conduct, Defendants would

23  have been unable to perpetrate the extent to which they increased the prices of their Fuel

24  Surcharges.

25      45.    The collusion of Japan Airlines International and All Nippon Airways ("ANA") is

26  representative of the behavior of the other Defendants. Japan Airlines International and ANA

27  agreed to raise and lower fares on nearly always the same dates and were in lockstep on

28  surcharges for transpacific fares:

9

1

2 | June 8, 2004, ANA files a notice with the

3 | Japanese government to raise IATA

4 | international fares, in the wake of increased

5 | fuel prices, to and from Japan, effective July 1,

6 | 5% hike, exception North America economy

7 | fares, but not business class.

June 8, 2004, Japan Airlines files a notice with the Japanese government to raise international fares, in the wake of increased fuel prices, to and from Japan, effective July 1, 5% hike, exception North America economy fares, but not business class.

8

9 | January 5, 2005, ANA announces it will add

10 | fuel surcharges on international fares on

11 | February 1. The surcharges for transpacific

12 | flights were 2,500 yen.

January 20, 2005, Japan Airlines announces it will add fuel surcharges on international passenger fares on February 1. The surcharges for transpacific flights were 2,500 yen.

13

14 | June 3, 2005, Japan Airlines files a notice with

15 | the Japanese government to raise its

16 | international fuel surcharge effective July 1.

June 7, 2005, ANA files a notice with the Japanese government to raise its international fuel surcharge effective July 7.

17

18 | January 16, 2006, Japan Airlines files a notice

19 | with the Japanese government to raise its

20 | international fuel charge effective

21 | March 1.

January 23, 2006, ANA files a notice with the Japanese government to raise its international fuel surcharge, effective March 1.

22

23 | August 17, 2006, Japan Airlines files a notice

24 | with the Japanese government to raise its

25 | international fuel surcharge, effective October

26 | 1, from 8,000 yen to 13,600 yen ($66 to $113).

August 31, 2006, ANA files a notice with the Japanese government to raise its international fuel surcharge, effective October 15, from 8,000 yen to 13,600 yen ($66 to $113).

27

28

10

CLASS ACTION COMPLAINT

1  November 16, 2006, Japan Airlines files a

2  notice with the Japanese government to reduce

3  the fuel surcharge on international passenger

4  fares effective January 1, lowering the

5  surcharge from 13,600 yen to 13,000 yen

6  ($113 to $108).

7

8  March 19, 2007, Japan Airlines files a notice

9  with the Japanese government to reduce the

10  fuel surcharge on international passenger fares

11  effective May 1, to 11,000 yen or $91.

12

13  May 15, 2007, Japan Airlines files a notice

14  with the Japanese government to raise the fuel

15  surcharge on international passenger fares

16  effective July 1, from 11,000 yen or $91 to

17  12,000 yen or $100.

18

19  August 15, 2007, Japan Airlines files a notice

20  with the Japanese government to raise the fuel

21  surcharge on international passenger fares

22  effective October 1, from 12,000 yen or $100

23  to 13,000 yen or $108.

24

25  November 16, 2006, ANA files a notice with

26  the Japanese government to reduce the fuel

27  surcharge on international passenger fares

28

effective January 1, lowering the surcharge

from 13,600 yen to 13,000 yen ($113 to $108).

March 20, 2007, ANA files a notice with the

Japanese government to reduce the fuel

surcharge on international passenger fares

effective May 1, to 11,000 yen or $91.

May 25, 2007, ANA files a notice with the

Japanese government to raise the fuel

surcharge on international passenger fares

effective July 10, from 11,000 yen or $91 to

12,000 yen or $100.

August 20, 2007, ANA files a notice with the

Japanese government to raise the fuel

surcharge on international passenger fares

effective October 1, from 12,000 yen or $100

to 13,000 yen or $108.

11

CLASS ACTION COMPLAINT

1

## CARTEL-LIKE TRADE ORGANIZATIONS

2      46.    Defendants' executives, as well as other air carriers' executives, met formally or

3 informally over the years at various trade meetings or meetings of trade associations, such as the

4 International Air Transport Association, the Association of Asian Pacific Airlines, oneworld, Star

5 Alliance and SkyTeam Alliance. At one or more of these meetings Defendants conspired to

6 artificially inflate fuel Surcharges on international passenger air transportation.

7      47.    One of the keys to the conspiracy is the 42-year-old Association of Asia Pacific

8 Airlines ("AAPA"). The 17-member trade association, based in Kuala Lumpur, Malaysia, is the

9 most significant group representing Asia/Pacific carriers. The AAPA boasts that its "member

10 airlines carry 285 million passengers and 10 million tonnes of cargo representing approximately

11 one-fifth of global passenger traffic and one-third of global air cargo traffic respectively." Ten of

12 the defendants are members of AAPA.

13      48.    The primary purpose of AAPA is to serve as a forum for members' views on

14 issues of common interest and to foster close cooperation. According to the organization, "AAPA

15 speaks with a common voice on behalf of the Asia Pacific carriers and puts forward Asian

16 perspectives when dealing with governments, aircraft manufacturers, airport authorities and other

17 organizations on industry issues. The activities of the Association cover every aspect of civil

18 aviation where the airlines feel they can work together for mutual benefit. In addition, AAPA

19 retains access to specialized legal and aviation consultants in Brussels and Washington, a

20 reflection of the significant impact which the profusion of U.S. and E.U. regulatory developments

21 have on all international carriers including Asia Pacific airlines."

22      49.    AAPA was formed during a meeting of Asian airline executives in 1965 to discuss

23 regional cooperation. The following year, Philippine Airlines, China Airlines, Korean Airlines

24 and Malaysian Airlines officially formed the Orient Airlines Research Bureau. The group

25 evolved into the Orient Airlines Association and in 1996 changed its name to Association of Asia

26 Pacific Airlines.

27      50.    Another key to the conspiracy is the Geneva-based International Air Transport

28 Association. All of the defendants are members of the IATA, which was founded in 1945 in

CLASS ACTION COMPLAINT

1    Havana, Cuba. IATA represents more than 240 airlines comprising 94% of scheduled

2    international air traffic. It describes itself as "the prime vehicle for inter-airline cooperation." It

3    was an agreement reached at an IATA meeting in Geneva on May 28, 2004 that played a role in

4    triggering the fuel Surcharge conspiracy.

5        51.    Alliance memberships by airline:

6    Air New Zealand

7            •    Member of the Association of Asia Pacific Airlines.

8            •    Member of the Star Alliance.

9            •    Member of the International Air Transport Association.

10    All Nippon Airways

11            •    Member of the Association of Asia Pacific Airlines.

12            •    Member of the Star Alliance.

13            •    Member of the International Air Transport Association.

14    American Airlines

15            •    Member of oneworld.

16            •    Member of the International Air Transport Association.

17    Cathay Pacific Airways

18            •    Member of the Association of Asia Pacific Airlines.

19            •    Member of oneworld.

20            •    Member of the International Air Transport Association.

21    China Airlines

22            •    Member of the Association of Asia Pacific Airlines.

23            •    Member of the International Air Transport Association.

24    EVA Airlines

25            •    Member of the Association of Asia Pacific Airlines.

26            •    Member of the International Air Transport Association.

27    Japan Airlines International

28            •    Member of the Association of Asia Pacific Airlines.

13

1              •         Member of oneworld.

2              •         Member of the International Air Transport Association.

3         Malaysia Airlines

4              •         Member of the Association of Asia Pacific Airlines.

5              •         Member of the International Air Transport Association.

6         Qantas Airways

7              •         Member of the Association of Asia Pacific Airlines.

8              •         Member of oneworld.

9              •         Member of the International Air Transport Association.

10        Singapore Airlines

11             •         Member of the Association of Asia Pacific Airlines.

12             •         Member of the Star Alliance.

13             •         Member of the International Air Transport Association.

14        Thai Airways

15             •         Member of the Association of Asia Pacific Airlines.

16             •         Member of the Star Alliance.

17             •         Member of the International Air Transport Association.

18        United Airlines

19             •         Member of the Star Alliance.

20             •         Member of the International Air Transport Association.

21                       **CODE SHARING BUSINESS PARTNERSHIPS**

22        52.    In addition to the four different alliances/trade groups, various defendants are in

23   effect business partners with each other through what is called code sharing. Code sharing is a

24   business term which was first originated in 1990 when Qantas Airways and American Airlines

25   combined services between an array of U.S. and Australian cities. Code sharing is a legal

26   business arrangement. However, it provides a mechanism to conduct illegal activity.

27        53.    A code share is part of a "cooperative services" agreement between the two

28   carriers. It refers to the practice where a flight operated by an airline is jointly marketed as a

14

1  flight for one or more other airlines. Most major airlines today have code sharing partnerships

2  with other airlines. "Code" refers to the identifier used in flight schedule, generally the 2-

3  character International Air Transport Association airline designator code and flight number. For

4  example, YY123, flight 123 operated by the airline YY, could be sold by airline ZZ as ZZ456. It

5  is a business partnership that allows airlines to earn revenue by selling tickets on a partner's

6  flight.

7      54. According to the U.S. Department of Transportation and Defendants, the following

8  are the code sharing partnerships of the defendants listed alphabetically:

9      Air New Zealand / EVA Airways

10     Air New Zealand / Qantas (Tasman route)

11     Air New Zealand / Japan Airlines International

12     Air New Zealand / Singapore Airlines

13     Air New Zealand / Thai Airways

14     Air New Zealand / United Airlines

15     All Nippon Airways / Asiana Airlines

16     All Nippon Airways / EVA Airways

17     All Nippon Airways / Malaysia Airlines

18     All Nippon Airways / Singapore Airlines

19     All Nippon Airways / United Airlines

20     China Airlines / American Airlines

21     Cathay Pacific Airways / American Airlines

22     Cathay Pacific Airways / Japan Airlines International

23     China Airlines / Thai Airways

24     EVA Airways / Air New Zealand

25     EVA Airways / American Airlines

26     EVA Airways / All Nippon Airways

27     EVA Airways / Qantas

28     EVA Air / American Airlines

15

| | |
|---|---|
| 1 | Japan Airlines International / Air New Zealand |
| 2 | Japan Airlines International / American Airlines |
| 3 | Japan Airlines International / Cathay Pacific |
| 4 | Japan Airlines International / Korean Air |
| 5 | Japan Airlines International / Qantas Airlines |
| 6 | Japan Airlines International / Singapore Airlines |
| 7 | Japan Airlines International / Thai Airways |
| 8 | Malaysia Airlines / All Nippon Airways |
| 9 | Malaysia Airlines / Thai Airways |
| 10 | Qantas Airways / Air New Zealand |
| 11 | Qantas Airways / American Airlines |
| 12 | Qantas Airways / EVA Airways |
| 13 | Qantas Airways / Japan Airlines International |
| 14 | Singapore Airlines / Air New Zealand |
| 15 | Singapore Airlines / Asiana Airlines |
| 16 | Singapore Airlines / All Nippon Airways |
| 17 | Singapore Airlines / Malaysian Airlines |
| 18 | Singapore Airlines / United Airlines |
| 19 | Thai Airways / Air New Zealand |
| 20 | Thai Airways / China Airlines |
| 21 | Thai Airways / Japan Airlines International |
| 22 | Thai Airways / Malaysia Airlines |
| 23 | Thai Airways / United Airlines |
| 24 | United Airlines / Air New Zealand |
| 25 | United Airlines / All Nippon Airways |
| 26 | United Airlines / Asiana Airlines |
| 27 | United Airlines / Singapore Airlines |
| 28 | United Airlines / Thai Airways |

16

1

**CARTEL ACTIVITY MEETINGS**

2      55.    Over the years, executives of Defendant airlines have attended numerous meetings

3   where cartel-like activity was accomplished. Here are a few examples of meetings where

4   executives discussed and agreed on fuel surcharges:

5      56.    The International Air Transport Association, Special Meeting, Geneva, May 28,

6   2004. Fuel costs were the main topic of this meeting and there were agreements on how to add

7   surcharges for fuel. The Montreal Gazette reported on June 1, 2004, that "member carriers of the

8   International Air Transport Association might raise international fares by as much as five percent

9   to help cover a surge in jet fuel costs. The proposed fare increase of between two percent and five

10   percent was agreed at a May 28 meeting of the association, which represents more than 270

11   airlines worldwide, an IATA spokesperson said."

12      57.    The International Air Transport Association Annual General Meeting and World

13   Air Transport Summit, Singapore, June 6-8, 2004. More than 600 airline executives attended this

14   annual summit. Giovanni Bisignani, IATA CEO said in a welcoming statement, "While record

15   high fuel prices challenge our profitability it is time to put our efforts toward rebuilding the

16   industry." Immediately following this meeting on June 8, 2004 both Japan Airlines International

17   and All Nippon Airways filed applications with the Japanese government to raise international

18   passenger fares because of high fuel costs. In a news release announcing the Fuel Surcharge hike,

19   Japan Airlines International said:

20         "The application follows a special meeting of the members of the International

21         Air Transport Association in Geneva, May 28, (2004) when a resolution was

22         discussed to raise fares in the wake of increased fuel prices. This resolution has

23         now been adopted."

24   Japan Airlines International and All Nippon Airways were in lockstep on June 8,

25   2004, both announcing on that day that a five percent fuel Surcharge would be go into effect, on

26   the same day for both airlines, July 1, 2004.

27      58.    2005 International Flight Services Association, Global Leadership Conference -

28   Asia Pacific, August 30 - September I, 2005 Tokyo Japan: This meeting was labeled as "The

17

CLASS ACTION COMPLAINT

1   Challenge of Change." Among the participants were, Makoto Fukada, Managing Director and

2   Senior Vice President International Passenger, Japan Airlines; Sandra Pineau, Senior Director of

3   Planning and Design, Continental Airlines; Charles Grossrieder, a manager at Cathay Pacific

4   Airways; Nikom Raviyan, Vice President, Thai Airways; Sandeep Bahl, General Manager,

5   Northwest Airlines, Shigeru Miyata, Vice President, Japan Airlines; Kriengsakdi

6   Phatharacharukul, Director, Thai Airways; and Hee Won Jo, Senior Manager, Asiana Airlines.

7       59.     2nd Annual Asia Pacific & Middle East Aviation Outlook Summit 2006,

8   December 5-6, 2005 Kuala Lumpur, Malaysia: The theme of this meeting was "Towards Best

9   Practice; Maximising Revenues and Minimising Costs." On the first day of the meeting, the

10  guests included Dato Seri Bashir Ahmad, Malaysia Airport's CEO; Willy Boulter, Commercial

11  Director for Virgin Atlantic Airways; and Stanley Kuppusamy, President, International Relations,

12  Singapore Airlines. Fuel surcharges were a topic of discussion.

13      60.     Aviation Emergency Response 2006, AAPA sponsored, September 19-21, 2006

14  Bangkok, Thailand: This meeting was attended by international airport officials and AAPA

15  member executives. Meetings were held on increasing revenues in the transpacific area by way of

16  Fuel Surcharges and other financial means.

17      61.     3rd Annual Asia Pacific & Middle East Aviation Outlook Summit, November 9-

18  10, 2006 Singapore: Participating in this meeting were executives from most of the Defendant

19  airlines, including Geoff Dixon, CEO of Qantas and Huang Cheng Eng, Executive VP for

20  Singapore Airlines. One of the issues presented and discussed was *"Fighting Costs: Fuel prices*

21  *and managing risk exposure."*

22      62.     AAPA Forum, November 28-29, 2006 Bandar Seri Begawan, Brunei Darussalam:

23  More than 120 aviation industry stakeholders attended this meeting, organized by AAPA. At this

24  meeting, Defendants and others discussed surcharges.

25      63.     Asia Pacific Aviation Summit, July 24-25, 2007 Sydney, Australia: This meeting

26  was put on by the Asia Pacific aviation industry. Some of the issues discussed included the

27  impact of the investigation by the U.S. Department of Justice into fare price fixing. Another topic

28  was "working together efficiently" to diffuse the investigation of added surcharges.

18

1

## THE INVESTIGATION

2        64.     The U.S. Department of Justice ("DOJ") started investigating air passenger fuel

3  surcharge conspiracies worldwide in 2006, particularly transatlantic routes and transpacific routes

4  to and from the West Coast. The DOJ announced on August 1, 2007 a $300 million settlement

5  with British Airways and it cited passenger transatlantic routes. In its news release, the DOJ said:

6  "The Department also charged that between August 2004 and February 2006, British Airways

7  engaged in a conspiracy to suppress and eliminate competition by fixing the Fuel Surcharge

8  charged to passengers on long-haul international flights, including flights between the United

9  States and the United Kingdom."

10        65.     The DOJ also focused on transpacific flights to and from the United States, noting

11  that investigation is "ongoing" and includes other Defendants named herein.

12        66.     The DOJ also announced a settlement with Korean Air for fare price fixing on

13  flights from the United States to Korea. The DOJ stated that Korean Air has "agreed to cooperate

14  with the Department's ongoing investigation." Korean Air's unnamed co-conspirator in the

15  passenger fare price fixing via Fuel Surcharges was widely reported to be Asiana Airlines, which

16  sought amnesty.

17        67.     Under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, a

18  company can apply for leniency from the Department of Justice for its participation in antitrust

19  activities. Under the so-called Corporate Leniency Program, if a company comes forward with

20  information about antitrust activities and cooperates in the investigation, it is eligible for

21  conditional amnesty from prosecution.

22        68.     Both Korean Air and Asiana Airlines are among the top transpacific carriers in the

23  world. It was not the first time Korean Air and Asiana Airlines have been implicated in collusion

24  and anticompetitive behavior. The Korean Fair Trade Commission fined Korean Air and Asiana

25  in 2001 for conspiring to set passenger air transportation services in Korea.

26        69.     In addition, several of the Defendants and unnamed co-conspirators have been

27  identified as targets and or subjects in international investigations by the U.S. Department of

28  Justice and the European Union into air cargo fuel surcharge price fixing. The targets, many of

19

1   which are also named in civil suits, include All Nippon Airways, American Airlines, Asiana

2   Airlines, Japan Airlines, Korean Airlines, Northwest Airlines, Qantas Airways and United

3   Airlines. In both the air passenger and cargo investigations, Defendants and other airlines are

4   accused of developing and participating in conspiracies to increase revenue by assessing inflated

5   Fuel Surcharges.

6   **ADMISSIONS BY CO-CONSPIRATORS**

7   70.      On August 13, 2007, Qantas Chief Executive Officer Geoff Dixon announced that

8   Qantas Airways would set aside $40 million to cover a potential fine in the United States as a

9   result of Fuel Surcharges and price fixing in its freight division. In a news release, Dixon was

10   quoted as saying:

11   "On 1 August 2007, the U.S. Department of Justice announced that British Airways and

12   Korean Air had agreed to plead guilty and pay separate US$300 million criminal fines for

13   their roles in conspiracies to fix prices of passenger and cargo flights. British Airways

14   subsequently announced that US$200 million of its fine related to cargo. Based on these

15   developments, a decision has been made to make a US$40 million (A$47 million)

16   provision in the 2006/07 Financial Accounts!"

17   Dixon also was quoted as saying:

18   "We have investigated this issue thoroughly and are confident that the unacceptable

19   conduct was limited to a small number of people."

20   71.      On October 6, 2007, the Japanese daily newspaper *Asahi Shimbun* reported that

21   Japan Airlines International would book a roughly $171 million charge for potential fines from a

22   global price fixing probe by U.S. and European Union officials. The newspaper said:

23   "The company's move comes after the U.S. Justice Department fined British Airways

24   PLC and Korean Air Lines Co. $300 million each in August for fixing the prices of

25   passenger and cargo flights with other airlines. The companies allegedly conspired to set

26   fuel surcharges when oil prices rose."

27

28

20

1

## **VIOLATIONS ALLEGED**

2      72.      During the Class Period Defendants engaged in a continuing agreement,

3 understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or

4 stabilize the prices of Passenger Air Transport and Fuel Surcharges in the United States and

5 throughout the world in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

6      73.      In formulating and effectuating the alleged contract, combination, or conspiracy,

7 Defendants engaged in anti-competitive activities, the purpose and effect of which were to

8 artificially raise, fix, maintain, and/or stabilize the prices of Passenger Air Transport and Fuel

9 Surcharges. These activities included the following:

10            a.      agreeing to charge prices of Passenger Air Transport and Fuel Surcharges

11 at certain levels and otherwise to fix, raise, maintain, and/or stabilize the prices of Passenger Air

12 Transport and Fuel Surcharges charged in the United States and throughout the world;

13            b.      charging Passenger Air Transport and Fuel Surcharges at the agreed-upon

14 rates;

15            c.      signaling increases in the price of Passenger Air Transport and Fuel

16 Surcharges by, inter alia, publicly announcing their increases;

17            d.      moving prices of their Passenger Air Transport and Fuel Surcharges in

18 lockstep; and

19            e.      announcing new Passenger Air Transport and Fuel Surcharges prices

20 nearly simultaneously or within days of each other.

21      74.      During the Class Period, the Defendants increased the Passenger Air Transport

22 and Fuel Surcharges they charged. These increases in Passenger Air Transport and Fuel

23 Surcharges cannot be explained by actual increases in fuel prices or supply/demand forces, but

24 rather were the result of anticompetitive conduct.

25      75.      During the Class Period, Plaintiffs and members of the Class purchased Passenger

26 Air Transportation directly from Defendants (or their agents, subsidiaries, and/or controlled

27 affiliates).

28

21

CLASS ACTION COMPLAINT

1      76.    The illegal combination and conspiracy alleged herein has had the following

2  effects, among others:

3          a.    Price competition in the pricing of Passenger Air Transportation and Fuel

4  Surcharges thereon has been restrained, suppressed, and/or eliminated;

5          b.    Price competition in the contracting of Passenger Air Transportation has

6  been restrained, suppressed, and/or eliminated;

7          c.    Prices for Passenger Air Transportation and Fuel Surcharges thereon

8  charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high,

9  non-competitive levels; and

10          d.    Members of the Class have been deprived of the benefit of free and open

11  competition.

12                  **INJURY TO PLAINTIFFS AND THE CLASS**

13      77.    During the Class Period, Plaintiffs and the members of the Class, because of

14  Defendants' antitrust violations, paid Surcharges and other fees they would not have paid absent

15  such violations.

16      78.    As a result, Plaintiffs and the members of the Class it seeks to represent have been

17  injured and damaged in their business and property in an amount to be determined according to

18  proof.

19      79.    As a direct and proximate result of the illegal conspiracy, Plaintiffs and the

20  members of the Class have been injured and financially damaged in their respective businesses

21  and property, in that they have paid Surcharges and other fees during the Class Period they would

22  not have paid in the absence of the illegal conspiracy.

23                        **PRAYER FOR RELIEF**

24      WHEREFORE, Plaintiffs pray that:

25      A.    The Court determine that this action may be maintained as a class action under

26  Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

27      B.    The Court adjudge and decree that the contract, combination and conspiracy

28  alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman

CLASS ACTION COMPLAINT

1   Act;

2         C.     Judgment be entered against Defendants, jointly and severally, and in favor of

3   Plaintiffs and the Class for damages as allowed by law as determined to have been sustained by

4   them, and that all damages are trebled in accordance with the antitrust laws;

5         D.     Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and

6   transferees, and their respective officers, directors, agents and employees, and all other persons

7   acting or claiming to act on behalf of Defendants or in concert with them, be permanently

8   enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or

9   renewing the combinations, conspiracy, agreement, understanding or concert of action, or

10  adopting any practice, plan, program or design having a similar purpose or effect in restraining

11  competition;

12        E.     The Court award Plaintiffs and the Class attorneys' fees and costs, and pre

13  judgment and post judgment interest as permitted by law; and

14        F.     The Court award Plaintiffs and the Class such other and further relief as may be

15  necessary and appropriate.

16                            **DEMAND FOR JURY TRIAL**

17        Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the

18  United States, Plaintiff demands a trial by jury of all issues so triable.

19  DATED: February 26, 2008

20                                    By: _R. Alexander Saveri_

21                                        Guido Saveri (22349)
                                          R. Alexander Saveri (173102)
22                                        Cadio Zirpoli (179108)
                                          William Heye (233249)
23                                        SAVERI & SAVERI, INC.
                                          111 Pine Street, Suite 1700
24                                        San Francisco, CA  94111
                                          Telephone: (415) 217-6810
25

26

27

28

                                          23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brian P. Murray
Lawrence D. McCabe
MURRAY, FRANK & SAILER LLP
275 Madison Avenue
New York, NY 10016
Telephone: (212) 682-1818

John G. Emerson, Jr., Esq.
EMERSON POYNTER LLP
The Museum Center
500 President Clinton Avenue, Suite 305
Little Rock, AR 72201
Telephone: (501) 907-2555

B.J. Wade
GLASSMAN, EDWARDS, WADE &
WYATT, P.C.
26 N. Second Street
Memphis TN 38103
Telephone: (901) 527-4673

Attorneys for Plaintiff Christian Duke

CLASS ACTION COMPLAINT

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

CHRISTIAN DUKE, individually and on behalf of all other similarly situated

## DEFENDANTS

AIR NEW ZEALAND, et al.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111   415-217-6810

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [X] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & | [ ] 368 Asbestos Personal | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Injury Product Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 195 Contract Product Liability | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
The Sherman Act, 15 USC Section 1

Brief description of cause:
Violation of the Sherman Act

## VII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE."

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[X] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE

DATE  2.26.08

SIGNATURE OF ATTORNEY OF RECORD
R. Alexander Saveri/cs

# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA



CHRISTIAN DUKE, individually and on behalf of
all others similarly situated

**SUMMONS IN A CIVIL CASE**

v.

CASE NUMBER:

# CV 08     **1142**

AIR NEW ZEALAND, ALL NIPPON AIRWAYS, CATHAY PACIFIC AIRWAYS, CHINA AIRLINES, EVA AIRLINES, JAPAN AIRLINES INTERNATIONAL, MALAYSIA AIRLINES, QANTAS AIRWAYS, SINGAPORE AIR, THAI AIRWAYS, UNITED AIRLINES

TO: (Name and address of defendant)

See above named defendants'

*EMC*

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Guido Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA 94111

an answer to the complaint which is herewith served upon you, within   20     days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

**FEB  2 6** 2008

DATE_____

Helen L. Almacen

_____
(BY) DEPUTY CLERK